UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   STEVEN GOLOWACH,

                           Plaintiff,

            - against -

   CAROLYN W. COLVIN, Acting
   Commissioner of Social Security,

                           Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

16 Civ. 2913 (BMC)

**COGAN**, District Judge.

       Plaintiff commenced this action pursuant to 2 U.S.C. § 405(g), seeking review of a decision of the Commissioner of Social Security (the "Commissioner"), denying his application for disability insurance benefits. Although the Administrative Law Judge ("ALJ") found that plaintiff has severe impairments that impose more than minimal functional limitations and that he can no longer work in his previous professions, the ALJ determined that he had the residual functional capacity to perform sedentary work. Following the ALJ's decision, plaintiff submitted additional medical evidence to the Appeals Council and has submitted yet additional medical evidence to this Court.

       This action is before me on the Commissioner's and plaintiff's cross-motions for judgment on the pleadings. For the following reasons, I affirm the decision of the ALJ.

## BACKGROUND

       Plaintiff applied for disability insurance benefits, citing meniscus tears and torn cartilage in his left knee, a calcaneus fracture of his right ankle, and multiple bulging discs in his back as his disability. The application was denied, and he requested a hearing before an ALJ. During

the hearing, plaintiff stated that certain medical records were outstanding. The ALJ subsequently subpoenaed additional medical records, thereafter issuing a decision where he found plaintiff not disabled. Plaintiff sought review with the Appeals Council and provided the Council additional medical records as they became available.[1] The Appeals Council ultimately denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

### I. Plaintiff's Non-Medical History

Plaintiff was born in June 1969 and has his GED. In the years preceding the onset of his alleged disability, plaintiff worked as an assistant store manager at a pharmacy, as an operations manager at a retail store, and in construction through self-employment. He reported that he had stopped working due to his conditions on June 10, 2014. Plaintiff reported that due to back and knee pain, he was limited in standing, walking, running, lifting, and bending. Plaintiff stated in a function report that during the day he mostly would lie down or sit with his leg elevated and compresses on his lower back and knee. He further said that sharp shooting pains in his knee and back affected his sleep.

Notwithstanding these conditions, plaintiff stated that he was able to take care of his personal needs without assistance, although his condition affected his ability to bend and stand for long periods. Plaintiff said that he made simple meals on a daily basis, but that he could not stand to make full course meals because of the pain and pressure he felt. He stated that he could do household chores like light dusting. Plaintiff reported being able to drive and shop monthly in stores for one hour. Plaintiff said he socialized with others regularly. He noted that his hobby

---

[1] Pursuant to 20 C.F.R. § 404.970, a claimant may submit additional evidence to the Appeals Council, and the Appeals Council will consider such evidence if it is "new," "material," and "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). "[E]vidence relates to the period on or before the ALJ's decision when it is (1) dated on or before the date of the ALJ's decision; or (2) post-dates the ALJ's decision but is reasonably related to the time period adjudicated by the ALJ." Byrd v. Colvin, No. 15-CV-403, 2016 WL 5678551, at *9 (E.D.N.Y. Sept. 28, 2016). Here, the supplemental evidence relates to medical examinations that were conducted after the ALJ's decision. None of it is material.

2

was watching television. Plaintiff stated that he could walk one and one-half blocks before having to rest for ten minutes. He said he used crutches, a cane, and a brace/splint "all the time."

## II. Plaintiff's Medical History

Plaintiff visited Paul Leva, M.D., an internist, for a routine medical examination during which he reported that his left knee had started locking, that he was unable to bend, and that he had back pain. An MRI showed a mild sprain and/or mucoid degeneration of the anterior cruciate ligament ("ACL"); suspicion of a low grade oblique tear; minimal hypertrophic lipping without significant cartilage thinning; and no significant joint effusion. X-rays of the lumbar spine taken that day showed lumbar straightening with mild degenerative changes at the L3 vertebrae. Dr. Leva referred plaintiff for physical therapy.

Plaintiff later reported to Dr. Leva that physical therapy had not improved his back or knee pain. After a second examination, Dr. Leva administered a trigger point lidocaine injection to the lumbar spine and prescribed Voltaren gel and physical therapy for his back and knee. Dr. Leva also recommended no heavy lifting, exercises, weight loss, and a limitation on prolonged sitting and standing. During a subsequent visit, plaintiff reported continued pain and a limp, and Dr. Leva prescribed Tizandine and Lidocaine ointment, as needed, as well as possible laser therapy of the back.

Shortly thereafter, Sandra Iannotti, M.D., an orthopedic surgeon, evaluated plaintiff and found no acute distress, a non-antalgic gait, full range of motion, and pain with squatting. Dr. Iannotti diagnosed a medial meniscal tear and recommended a left knee arthroscopy and partial medial meniscectomy. Dr. Iannotti performed the surgery, after which plaintiff reported that he was not doing well. On examination, Dr. Iannotti found that plaintiff had a minimally antalgic gait and a good range of motion with pain and recommended physical therapy. Physical

therapist Anthony Corso assessed plaintiff and noted that he required skilled physical therapy to restore his prior level of functioning.

At a subsequent follow-up with Dr. Iannotti, plaintiff complained of pain after physical therapy, and Dr. Iannotti's examination of the left knee showed, among other things, excellent range of motion, full extension, and flexion to 135 degrees, and good stability. Dr. Iannotti recommended temporarily halting physical therapy, increased the dosage of Ibuprofen, and ordered a repeat MRI. After reviewing the MRI, Dr. Iannotti prescribed Ibuprofen three times per day and core strengthening for the back. Plaintiff returned to Dr. Leva, reporting lower back and left knee pain and difficulty walking and climbing stairs. Plaintiff returned to Dr. Iannotti, as well, and reported that he felt continued left knee pain, that he had stopped physical therapy, and that he was taking Ibuprofen. Dr. Iannotti urged him to return to physical therapy. Plaintiff later saw Dr. Leva to have a disability form completed, during which he repeated his earlier complaints. Dr. Leva, although diagnosing back and limb pain, opined that plaintiff could walk, stand, sit, push, pull, and bend for one to two hours each, lift five pounds, and not use public transportation.

Plaintiff returned to Dr. Iannotti, who recommended a repeat knee arthroscopy and partial lateral meniscectomy after examining him. She performed the second knee surgery, after which plaintiff reported "tremendous" anterior knee pain and difficulty straightening, bending, and walking. Dr. Iannotti prescribed Vicodin, advised that he use ice and heat, and recommended physical therapy. Sometime after, plaintiff reported slowly getting better, using crutches and a cane intermittently, and taking Vicodin occasionally. He had not yet started physical therapy, and Dr. Iannotti urged him to do stretching exercises. About a month later, plaintiff reported to Dr. Iannotti that he had sharp and throbbing pain in his left knee when walking, standing, and

4

bending. On examination, Dr. Iannotti stated that she did not think that the meniscus had anything to do with plaintiff's pain, as it looked "beautiful" arthroscopically and all his pain was not typical meniscal. She stated that the MRI was equivocal as to the cause of his pain and that it seemed to be chronic regional pain syndrome ("CRPS"). Dr. Iannotti recommended that plaintiff be examined by a CRPS specialist or a neurologist.

Around the same time, Dr. Leva completed a disability questionnaire, opining that plaintiff could sit, stand, and walk for less than one hour each per day. He further opined that plaintiff had to move from a seated position every few hours for a few minutes' duration and that he did not need to elevate his legs while sitting. Dr. Leva also opined that plaintiff could not lift or carry any weight, but that he had no significant limitations in using his arms, hands, or fingers for reaching, handling, or manipulating. Dr. Leva did say that plaintiff's pain symptoms would increase if he had to sit for long periods of time and that he would likely be absent from work more than three times a month.

Dr. Iannotti also completed a disability questionnaire, opining that plaintiff could stand, sit, and push/pull/bend for one-to-two hours each per day, but that he could not walk. She opined that he could lift ten pounds occasionally.

Charles Bleifeld, M.D., an orthopedist in Dr. Iannotti's practice, provided a second opinion about plaintiff's left knee. On examination, Dr. Bleifeld found that plaintiff walked with a flexed knee gait, but was able to bear full weight without difficulty. He opined that plaintiff was having a problem managing his pain and noted that plaintiff had not been going to physical therapy because he felt it made the pain worse. Among other things, Dr. Bleifeld recommended formal physical therapy as necessary to get rid of his flexion contracture.

5

Matthew Tavroff, D.P.M., a podiatrist, also evaluated plaintiff around this time in connection with plaintiff's complaints of right heel pain. Plaintiff reported having a calcaneal fracture in 2008, but more recently experiencing pain for the preceding six months. Dr. Tavroff diagnosed foot pain and edema and advised soaking the right foot in Epsom salts. Plaintiff returned to Dr. Tavroff complaining of right heel pain, and Dr. Tavroff's examination revealed the same diagnoses. In a subsequent visit, Dr. Tavroff administered a lidocaine injection, which plaintiff stated had helped for two days.

Plaintiff thereafter returned to Dr. Iannotti, again complaining of pain in the left anterior knee. Plaintiff reported trying to go back to work for two weeks using a Dynasplint, which he said he could tolerate for about a day. He was using a cane to walk and reported only using Ibuprofen because of withdrawal symptoms related to the other pain medications, including Vicodin and Percocet. Dr. Iannotti highly recommended, as did the Hospital for Special Surgeries, which plaintiff also visited, that plaintiff do formal physical therapy to improve his flexion contracture. Dr. Iannotti stated that, "he remains out of work, total disability, unable to stand or walk for significant periods of time."

Plaintiff subsequently followed-up with Dr. Tavroff for right heel and ankle pain, and Dr. Tavroff recommended wider shoes to accommodate an ankle brace, follow-up with the doctor who previously treated his foot in 2008, and physical therapy as advised by his orthopedist. Dr. Tavroff also provided an assessment for the Suffolk County Department of Social Services, where he opined that plaintiff could walk, stand, and sit for one-to-two hours each per day and that he could lift ten pounds occasionally. He also contraindicated standing, walking, and bending. Around the same time, Dr. Iannotti also completed an employability assessment, opining that plaintiff could walk and stand for one-to-two hours each, and sit for more than four

6

hours (or no evidence of limitation). She also opined that he could push/pull/bend for more than four hours and that he was unlimited in using his hands.

Plaintiff began physical therapy, and a progress report from physical therapist Venise Mulé Glass noted that plaintiff had made "some progress" in the seven times she had seen him for his left knee. Ms. Glass rated his endurance as fair and stated that his function was limited due to severe pain and pressure; she advised him that he continue physical therapy. Ms. Glass also provided an assessment, opining that plaintiff could stand, walk, and push/pull/bend for two-to-four hours each, sit more than four hours (or no evidence of limitation), and lift 20 pounds occasionally and ten pounds frequently. She also stated that squatting and climbing were contraindicated. She opined that plaintiff was capable of working part-time.

The Suffolk County Department of Social Services exempted plaintiff from participating in temporary work activities due to orthopedic barriers.

**III.     The Proceedings Before the ALJ and the ALJ's Findings**

During the proceedings before the ALJ, plaintiff testified regarding his impairments. Plaintiff testified that it was harder to stand than to sit, but that he could not stand for any length of time because it put pressure on his knee and foot. He further testified that he could not sit at all because of the pressure in his knee, feelings of pins and needles, and numbness. Plaintiff also testified regarding problems climbing stairs and bending. He stated that he did no housework, had no hobbies, and did not drive due to his knee impairment.

Further, Edna F. Clark testified as an independent vocational expert at the ALJ hearing. The ALJ provided Ms. Clark a hypothetical of an individual with the following profile: An individual limited to sedentary work with occasional climbing, bending, balancing, stooping, kneeling, crouching, and crawling, who required use of a cane and one-minute repositioning

7

breaks after sitting for one-half hour. Ms. Clark stated that the individual could not perform work that was light and medium in exertion, which was plaintiff's previous work.

However, Ms. Clark stated that the individual could perform the following sedentary[2] unskilled work: surveillance system monitor (DOT 379.67-010), with 34,000 jobs in the national economy; final assembler (DOT 713.687- 018), with 40,000 jobs in the national economy; and bench assembly worker (DOT 734.687-018), with 120,000 jobs in the national economy. Ms. Clark added that a hypothetical individual with the same limitations could work a total of seven hours in a single workday,[3] consisting of sitting six hours and standing for one hour.

The ALJ found that plaintiff's severe impairments, consisting of "status post-arthroscopic repair of the medial and lateral menisci, right ankle tendonitis (peroneus longus and peroneus brevis), right subtalar joint arthritis, [and] degenerative disc disease of the lumbar spine," do not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that plaintiff has the residual functional capacity to perform sedentary work, except that he must be permitted a one-minute repositioning break every half hour, that he can occasionally bend, balance, stoop, kneel, climb, and crawl, and that he must use a cane for walking.

In forming this opinion, the ALJ gave great weight to Dr. Iannotti's most recent assessment, considering her previous assessments as temporary, because she is a specialist in the relevant field and plaintiff's treating orthopedic surgeon and because her assessment was consistent with the most recent MRI, Dr. Bleifeld's findings, and the current conservative course

---

[2] Sedentary work does not entail six straight hours of sitting; it can also encompass standing up or shifting positions during a workday. See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). Further, sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying small articles. 20 C.F.R. § 404.1567(a).

[3] Ms. Clark stated that although the Social Security Administration uses the 40-hour rule as a benchmark, 35 hours a week is still full-time work.

of treatment. The ALJ gave Ms. Glass's opinion good weight because she had seen the plaintiff seven times, and her opinion was consistent with his documented improvement. The ALJ gave Dr. Leva's opinion little weight because, even though Dr. Leva was plaintiff's treating physician, he is not a specialist like Dr. Iannotti. He also gave it less weight because Dr. Leva's opinion and review of the MRI was inconsistent with his examination findings. The ALJ also gave Dr. Tavroff's opinion limited weight because he provided no objective basis for his restrictions on sitting.

## **DISCUSSION**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). Instead, the Court examines the administrative transcript to determine whether the correct legal standards were applied and whether the Commissioner's decision is supported by substantial evidence. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (internal quotation marks omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the Court is not permitted to substitute its analysis of the evidence. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in its duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment

for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

To be found disabled, a claimant must furnish medical and other evidence to establish the existence of his disability. See 42 U.S.C. § 423(d)(5)(A). The claimant must establish that he is unable to work due to a physical or mental impairment, resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The disability resulting from the medically determinable impairment must have lasted or be expected to last for a continuous period of not less that twelve months. See 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the claimant is unable to do his previous work or, considering his age, education, and work experience, any other kind of substantial gainful work that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step analysis in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520. First, the Commissioner determines if the claimant is working; if he is engaging in substantial gainful activity, the claim will be denied without consideration of the medical evidence. See 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). If not, the Commissioner moves to the second inquiry: determining whether the claimant has a "severe impairment," i.e., an impairment that limits his ability to do physical or mental work-related activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1521. If not, the claim will be denied. If the claimant has a severe impairment, the third inquiry involves the Commissioner considering the objective medical evidence to determine if the criteria of a "*per se* disabling"

impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P are met or equaled. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If so, the claim will be allowed.

If the claimant's severe impairments are not *per se* disabling, the fourth inquiry requires the Commissioner to determine the claimant's residual functional capacity ("RFC"), which is the most he can do despite his impairment. See 20 C.F.R. §§ 404.1520(e), 404.1545(a). The Commissioner then considers whether the claimant's RFC permits him to return to past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 404.1560(b). If he can do his former work, he is not disabled. See id. If the claimant cannot do his past work, the Commissioner then turns to the fifth step, which asks him to determine whether, based on the claimant's RFC and vocational factors, the claimant can do other work. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). A claimant bears the burden of proof at steps one through four, at which point the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

**I.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence, thereby failing to properly determine plaintiff's RFC at step four. As background, at step one, the ALJ found that plaintiff was not working. The ALJ found at step two that plaintiff had the following severe impairments: status post-arthroscopic repair of the medial and lateral menisci, right ankle tendonitis, right subtalar joint arthritis, and degenerative disc disease of the lumbar spine. Next, at step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments in the listings set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. Then, on step four, the ALJ

11

considered all of the evidence before him and concluded that plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except that he required a one-minute repositioning break every half hour. He also determined that plaintiff could occasionally bend, balance, stoop, kneel, climb, and crawl, and that he needed a cane for walking. The ALJ further determined that plaintiff could not perform his past relevant work as a retail manager, assistant store manager, or operations manager. Finally turning to step five, the ALJ, considering the testimony of the vocational expert, found that sedentary jobs matching plaintiff's RFC were available to plaintiff in the national economy, including surveillance system monitor, final assembler, and bench assembly worker. In so finding, the ALJ determined that plaintiff was not disabled.

I find that the ALJ's analysis was supported by the medical evidence before him and utilized the correct legal analysis. The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairments(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8P, 1996 WL 374184, *2. The assessment takes into consideration the limiting effects of all of a plaintiff's impairments, severe and non-severe, and the determination sets forth the most a plaintiff can do. See 20 C.F.R. § 404.1545(a)(1), (e).

A claimant's RFC is assessed based on all relevant evidence of record and takes into consideration the limiting effects of all impairments. See 20 C.F.R. § 404.1545. All relevant evidence of record includes medical and other evidence, as well as any statements by medical sources regarding what the claimant can still do. See 20 C.F.R. §§ 404.1527(c)(2), 404.1545(a)(3), 404.1546(c). Plaintiff had the burden of presenting evidence that he was

incapable of performing substantial gainful activity throughout the period at issue. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3). Plaintiff did not carry his burden.

Plaintiff unpersuasively argues that the ALJ substituted his own interpretation of the medical evidence for that of certain of his physicians. However, the ALJ did not substitute his interpretation; rather, the ALJ confronted several inconsistencies among the medical records and resolved them considering the record as a whole. It is well within the ALJ's discretion and authority to weigh the available medical opinions and resolve any conflicts to determine a claimant's RFC. See, e.g., Richardson, 402 U.S. at 399, 91 S. Ct. at 1426 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). Here, the ALJ properly exercised his discretion in resolving the evidentiary conflicts in the record to determine an RFC supported by substantial evidence.

Here, the ALJ evaluated every medical opinion in the record, as he was required to do. See 20 C.F.R. § 404.1527(c). If an opinion comes from a treating physician, then the ALJ generally will give more weight to that opinion "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments." 20 C.F.R. § 404.1527(c)(2). Moreover, among the factors that are listed in the Social Security Regulations, the ALJ can consider whether the opinion is from a specialist in his area of specialty when assigning weight to the opinion. See 20 C.F.R. § 404.1527(c)(5).

The ALJ here acted reasonably in assigning great weight to the most recent opinion of Dr. Iannotti, plaintiff's orthopedic surgeon. Dr. Iannotti opined that in an eight-hour workday,

13

plaintiff could sit for more than four hours (or, no evidence of limitation), push/pull/bend for more than four hours, walk and stand for one-to-two hours, and lift ten pounds occasionally. She further opined that he could not stand or walk for long periods of time, nor could he climb, but that he had no limitation in using his hands. The ALJ assigned this great weight given its consistency with other evidence in the record and given Dr. Iannotti's specialization in the relevant field and the fact that she was his treating surgeon. Dr. Iannotti's opinion supported the ALJ's finding of an RFC limited to sedentary work with additional limitations on climbing and the need to use a cane.

The ALJ also assigned good weight to the opinion of Ms. Glass, plaintiff's most recent physical therapist, who opined that, after seeing plaintiff on seven occasions, plaintiff could stand, walk, and push/pull/bend for two-to-four hours each, sit more than four hours (or no evidence of limitation), and lift 20 pounds occasionally and ten pounds frequently. She also stated that squatting and climbing were contraindicated. Ms. Glass's opinion, though not one of a treating physician, is the opinion of an individual who saw plaintiff seven times and saw him improve, and whose opinion is consistent with his treating orthopedic surgeon Dr. Iannotti and an RFC of sedentary work with additional limits on climbing and squatting. I similarly find that the opinion of Ms. Glass supported the ALJ's factual finding.

Plaintiff argues that the ALJ's determination is improper because Dr. Iannotti's and Ms. Glass's indication that he could sit for "more than 4 hours" in an eight-hour day does not lend itself to finding that plaintiff can hold a sedentary job. However, a review of their assessments shows that "more than 4 hours" corresponds to the column indicating "no evidence of limitation." All of the other options that either could circle were those indicating sitting for

14

fewer hours than four and representing some level of limitation. Moreover, neither Ms. Glass nor Dr. Iannotti included additional written comments regarding limitations for sitting.

And contrary to plaintiffs' argument, this absence of additional comments did not mean that the ALJ was required to contact these sources to inquire affirmatively about any sitting limitations. See Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."); Carvey v. Astrue, 380 F. App'x. 50, 51 (2d Cir. 2010) ("[B]ecause the record evidence was adequate to permit the ALJ to make a disability determination, we identify no merit in [plaintiff's] claim that the ALJ was obligated *sua sponte* to recontact the treating physicians.").

Plaintiff also argues that the ALJ erred in assigning limited weight to the opinion of Dr. Leva, his treating physician; however, I find that the ALJ acted properly in declining to give controlling weight to the opinion of Dr. Leva, who opined that plaintiff was limited to sitting and walking less than one hour each in a workday. The ALJ is required to give a treating physician's opinion controlling weight, but only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." See 20 C.F.R. § 404.1527(c)(2). If an ALJ refuses to assign a plaintiff's treating physician's opinion controlling weight, he must state a good reason for that determination, and the "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

The regulations list factors the ALJ should consider when evaluating the appropriate weight to assign to medical opinions, including a treating source's opinion that is not assigned controlling weight. See 20 C.F.R. § 404.1527(c). The factors to consider include (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(c); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. See Halloran, 362 F.3d at 32; Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Here, the ALJ explained why he was not giving Dr. Leva controlling weight. First, Dr. Leva's opinion was inconsistent with the opinion evidence of Dr. Iannotti and Ms. Glass. See 20 C.F.R § 404.1527(c)(4) (consistency of the opinion a factor in determining the weight to give medical opinion evidence); see also Halloran, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.").

Further, the ALJ noted that Dr. Leva is not a specialist, and Dr. Iannotti, the specialized orthopedic surgeon, was the better source for an assessment of the knee impairment. See 20 C.F.R. § 404.1527(c)(5) (more weight generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to a source who is not a specialist). Moreover, Dr. Iannotti's specialized assessment was supported by an associate of hers, Dr.

16

Bleifeld, another specialized orthopedist, who provided a second opinion regarding plaintiff's knee.

Additionally, it appears that the ALJ attributed little weight to Dr. Leva's opinion because the opinion was internally inconsistent with Dr. Leva's own examination notes, which indicated "a full range of motion in the lumbar, negative straight leg raising, and normal motor strength and sensation in the lower extremities." I also note that Dr. Leva's opinion pre-dates Dr. Iannotti's and Ms. Glass's opinions by six and seven months, respectively, which is to say, even if Dr. Leva's were not even internally inconsistent, Dr. Leva's opinions do not account for the improvement that plaintiff experienced when he began physical therapy as he had been recommended to do on several occasions.

Finally, I find that the ALJ properly considered the opinion of Dr. Tavroff, plaintiff's treating podiatrist, when he accorded little weight to his opinion. Dr. Tavroff opined that plaintiff could sit for only one to two hours per day, but he failed to provide any objective basis for this opinion, as the ALJ noted. The ALJ even pointed out Dr. Tavroff contraindicated only standing, walking, and bending in his notes, and therefore, the ALJ acted consistently with the other evidence of record in according Dr. Tavroff's opinion little weight.

## II. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff's argument that the ALJ applied an incorrect legal standard in assessing his testimony is also unpersuasive. An ALJ assesses a plaintiff's subjective symptoms using a two-step process. See 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. The first step requires the ALJ to determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. See SSR 96-7P, 1996 WL 374186, at *2. If an impairment is

17

shown, then at the second step, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." Id. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." Wells v. Colvin, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015); see also Snell, 177 F.3d at 135.

Here, the ALJ first determined that the objective medical evidence and plaintiff's function report did not corroborate plaintiff's subjective claims of disabling pain. See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). First, the ALJ noted that plaintiff stated in his function report that he was able to prepare simple meals, do light household chores, go shopping once a month, and drive himself to doctor's appointments. The function report presented a greater level of activity than plaintiff testified to during the hearing, where plaintiff denied being able to do much at all. In fact, plaintiff testified to being unable to do many of the functions he stated he was able to do in his function report. Given these inconsistencies and the ALJ's need and discretion to evaluate the record as a whole, it is not this Court's role to second guess the credibility determination of an ALJ. See, e.g., Aviles v. Comm'r of Soc. Sec., No. 15 Civ. 2992, 2016 WL 1642645, at *6 (E.D.N.Y. Apr. 25, 2016) ("Plaintiff is essentially asking this Court to second guess the credibility assessments and weighing of the evidence undertaken by the ALJ – which is not this Court's role.").

Moreover, an ALJ may find a claimant's statements less credible "if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7P, 1996 WL 374186, at *7. First, while plaintiff

complained of severe pain, the medical records indicate that plaintiff limited his pain management to Ibuprofen.  Yet, to qualify as a disability, pain must be so severe as to preclude any substantial gainful activity.  See 42 U.S.C. 423(d)(5)(A).  Second, the medical record is replete with instances where plaintiff was prescribed physical therapy and where it was indicated that he was not doing his physical therapy.  Although plaintiff argues that he had insurance problems that excuse him, those insurances problems only related to Dr. Iannotti's recommendation to see a neurologist.

In sum, the ALJ's decision to limit his reliance on plaintiff's testimony because of issues of credibility is supported by the face of the function report and the evidence of record as a whole.  That plaintiff would have weighed the evidence differently ignores the review standard, which guides courts to affirm an ALJ's determination where substantial evidence supports the ALJ's determination, even where other evidence may support the plaintiff.  See, e.g., DeChirico v. Callahan, 134 F.3d 1177, 1182 (2d Cir. 1998).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion for judgment on the pleadings is granted.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
December 14, 2016